UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Nancy Santos *on behalf of herself and others similarly situated,*<br><br>*Plaintiff,*<br><br>v.<br><br>Metro Portfolios, Inc., Selip & Stylianou, LLP, David Cohen, Esq.<br><br>*Defendants.* | Civil Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

Plaintiff Nancy Santos, by her attorneys, on behalf of herself and all others similarly situated, alleges as follows:

### NATURE OF ACTION

1. Ms. Santos brings claims pursuant to the Fair Debt Collection Practice Act (FDCPA), 15 U.S.C. §1692 et seq., New York General Business Law § 349, and New York Judiciary Law § 487.

2. The instant lawsuit seeks to vindicate the rights of New York consumers who have been victimized by Defendants' unfair and deceptive policy and practice of representing in post-judgment collection communications that certain state court consumer collection affidavits of service are true and proper when Defendants have every reason to believe otherwise.

3. Specifically, Defendants know that the affidavits of service in question were created as part of a pattern of sewer service perpetrated by an unscrupulous individual who subsequently had his process server's license application for renewal denied for routinely falsifying affidavits of service and service records.

4. Defendants' misconduct is the result of both affirmative misrepresentations and material omissions in its collection communications.

## JURISDICTION AND VENUE

5. This Court has federal question jurisdiction under 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1331.

6. Declaratory relief is available per 28 U.S.C. §§ 2201 and 2202.

7. The Court has supplemental jurisdiction over state claims per 28 U.S.C. § 1367.

8. Venue is proper in this District per 28 U.S.C. § 1391, as the acts, omissions and transactions that give rise to this action occurred, in substantial part, in this District.

9. Venue is also proper in this district because Plaintiff lives in this District, Defendants conduct business in this District, and the injury occurred in this District.

## PARTIES

10. At all relevant times, Plaintiff has resided in Westchester County, New York.

11. Plaintiff is a "consumer" as that term is defined in the FDCPA and pursuant to New York General Business Law § 349.

12. Defendant Metro Portfolios Inc. ("Metro Portfoios") is a high-volume debt collector based in New York.

13. Defendant Selip & Stylianou, LLP. ("Selip & Stylianou") is a high-volume debt collection law firm (including non-attorney collection operations) based in Woodbury, New York.

14. Selip & Stylianou was previously known as Cohen & Slamowitz, LLP ("Cohen & Slamowitz").

15. Selip & Stylianou's website contains a link to a Better Business Bureau profile which indicates that "[e]ffective January 1, 2015, Cohen & Slamowitz, LLP changed its name to Selip & Stylianou, LLP."

16. Defendant David Cohen is a partner at Defendant Selip & Stylianou and the President of Metro Portfolios. "Defendants" refers collectively to Metro Porfolios, Selip & Stylianou, including its predecessor Cohen & Slamowitz, LLP, and Mr. Cohen.

17. Each Defendant was and is a "debt collector" as that term is defined in the FDCPA. 15 U.S.C § 1692a(6).

18. Defendants regularly collect or attempt to collect, directly or indirectly, debts owed or due or asserted to be owed and due to another, by the use of the mail, telephone, and other means of interstate commerce.

## FACTS

19. On May 4, 2009, Metro Portfolios filed a consumer credit action against Ms. Santos in Westchester County Supreme Court ("State Court Action").

20. Cohen & Slamowitz represented Metro Portfolios in the State Court Action at that time.

21. David A. Cohen was a named partner at Cohen & Slamowitz when that firm filed the State Court Action on behalf of Metro Portfolios, of which he was the President.

22. The State Court Action alleged that Santos breached a consumer credit card agreement and, as a result, owed $991.25, plus statutory interest, to Metro Portfolios.

23. The State Court granted a default judgment in the amount of $1,785.90, entered on July 13, 2009.

24. Robert Winckelmann ("Winckelmann") purported to serve the summons and complaint in the State Court Action.

25. Winckelmann's affidavit of service alleges that he served the summons and complaint, by substitute service, to Luis Santos at 45 Traverse Ave. Apt. 2E, Port Chester, NY, on May 16, 2009, at 7:40pm.

26. The affidavit described Luis Santos as a "relative," a male with brown skin, black hair, between the ages of 21 and 35 years old, between 5'9" – 6'0" feet tall, and weighing between 161 and 200 pounds.

27. The affidavit is false and "Luis Santos" is a fiction, *i.e.* Ms. Santos has never lived at that address and she has no relative by this name.

28. At the time of service (2009), Winckelmann was licensed to serve process in New York City.

29. However, the New York City Department of Consumer Affairs declined to renew Winckelmann's license on October 12, 2012, because it discovered extensive irregularities his records.

30. In its letter declining to renew Winckelmann's license, the NYC Department of Consumer Affairs indicated that it found, *inter alia*, that:

   a. There were numerous instances in which he "created GPS records several miles away from the address of service contained in [his] GPS records[.]"

   b. There were several instances in which, he "created GPS records over fifty (50) minutes before [he] actually effected service according to [his] logbook[.]"

   c. On one occasion, he "created the GPS record almost fifty-nine (59) minutes after [he] actually effected service according to [his] logbook[.]"

   d. There were dozens of instances in which, Winckelmann "failed to create a GPS record for the service or attempt[.]"

   e. The denial also described gross record keeping deficiencies, including the failure to retain any copies of affidavits; failure to report on traverse hearings; failure to keep a chronological logbook; and failure to include statutorily required physical descriptions of the places of alleged service.

31. The NYC Department of Consumer Affairs concluded:

> Based on the [*sic*] all of the findings described above, you have failed to demonstrate that you maintain the integrity and honesty necessary to hold a process server license in the City of New York[.]

32. On December 9, 2012, the New York Post ran a story on Winckelmann, describing him as the "city's worst process server", noting that the city had revoked his license after "a sweeping DCA investigation discovered he was not actually serving legal papers to defendants, the city says", and noting numerous instances in which GPS records indicated that he had falsified service, resulting in default judgments against defendants.

33. Evidence of Winckelmann's misconduct also appears in various court proceedings in which one or more Defendants were either party to the proceedings or attorneys of record.

34. Indeed, as early as 2008, Defendants were aware that Winckelmann filed false affidavits. Specifically, in *Midland Funding LLC vs. Gloria Shepherd* (60-cv-2008)(White Plains City Court), in which Cohen & Slamowitz LLP was counsel for the state court plaintiff, Winckelmann alleged he served the defendant's husband.

35. Ms. Shepherd's husband had died twelve years prior.

36. After Shepherd filed an Order to Show Cause, including her husband's death certificate, the Court dismissed and awarded costs, stating "it is evident that defendant has substantially refuted the process server's affidavit."

37. In *Midland Funding LLC DBA in New York as Midland Funding of Delaware LLC vs. Jacqueline Oakley, Index No. 5042-2009*, the defendant, Oakley, moved to vacate a default judgment by disputing service. Winckelmann allegedly served the complaint, but Oakley's Order to Show Cause alleged that she was not personally served, did not reside at the address of service, and did not receive notice by mail (though she did receive other mail at the address of service). Midland Funding was represented by Selip & Stylianou in that case, and discontinued the action shortly after Oakley moved to vacate the judgement.

38. In 2011, Winckelmann allegedly served the complaint *Capital One Bank vs. Delilah Defreitas, Index No.: 4284-2011*. Defendants represented the state court plaintiff. The defendant received a garnishment notice approximately four years later, in 2015, and filed an Order

to Show Cause disputing service. As in Ms. Santos' case, Defreitas noted that she never lived at the address of service, and did not resemble the description of the individual in Winckelmann's affidavit of service. Selip & Stylianou to vacated its judgment shortly after receiving Defrietas' Order to Show Cause.

39. Of course, these examples of state court proceedings in which Defendants were aware of credible allegations that Winckelmann had falsified service are merely a few examples of which Plaintiff is aware without the benefit of discovery.

40. However, both Winckelmann and Defendants were high-volume filers involved in many thousands of collection cases each year, and, upon information and belief, Defendants were aware of dozens if not hundreds of instances in which consumers credibly alleged that Winckelmann falsified service.

41. Cohen & Slamowitz filed 59,708 collection cases in 2005, 83,665 collection cases in 2006, 87,877 cases in 2007, and 80,873 cases in 2008.

42. In 2018, upon information and belief, Selip & Stylianou, LLP filed at least 28,939 collection cases in New York.

43. Although the DCA report denying renewal of Mr. Winkelmann's license does not state the exact number of summonses Mr. Winckelmann served over any particular span of time, it is clear from the number of files reviewed in the denial that the volume is quite high and, upon information and belief, he purported to serve hundreds, if not thousands, of summons in state court consumer collection actions per year.

44. In short, Defendants have known for many years and from a variety of sources, including their own litigation experience, that Winckelmann regularly falsified affidavits of service, resulting in default judgments against consumers who had not been properly served.

45. And still, on or about September 12, 2019, Defendants served a Notice of Wage Withholding on Santos' employer.

46. That Notice attached, *inter alia*, an Income Execution signed by David Cohen of Selip & Stylianou, LLP who was and is also president of Metro Portfolios, LLP, *i.e.* the judgment creditor.

47. The Income Execution stated, *inter alia*, that the judgment was "duly entered in favor of the plaintiff", and stated that "You are directed to forthwith commence payment to the enforcement officer".

48. The Income Execution also stated, "DIRECTIONS TO JUDGMENT DEBTOR: YOU ARE NOTIFIED AND COMMANDED WITHIN 20 DAYS to start paying to the Enforcement Officer" a portion of her wages.

49. The Income Execution likewise "COMMANDED to withhold and pay over to the Enforcement Officer" a portion of Santos' wages.

50. The Notice of Wage Withholding also alleged that Santos owed $1,630.21 in interest, $39.00 in "Mileage, Levy and Filing Fees," and $170.81 in "Sheriff poundage and unpaid fees," in addition to the $1785.90 judgement amount.

51. Shortly after receiving the Notice of Income Withholding, Santos moved to vacate the judgement against her. Santos filed an Order to Show Cause and supporting affidavit with the Westchester County Supreme Court on October 3, 2019. The Honorable Linda S. Jamieson, Westchester County Supreme Court Justice, signed the Order on the following day.

52. In her affidavit, Santos attested that she "was never made aware of a lawsuit because [she] was never served."

53. Santos attested that she never lived at the address listed in Winckelmann's affidavit of service, stating "I do not now and have never lived at the address in Port Chester. My mother lived there, but I never did. In fact, at the time of the alleged service, I was living in the City of New York."

7

54. A copy of Santos' driver's license, and a notarized letter from her mother, which also attests that Santos did not live at the address listed in Winckelmann's affidavit, was attached to the affidavit.

55. Santos' affidavit also explained that she did not have a relative named Luis Santos and took issue with the incredibly vague description of the individual Winckelmann allegedly served.

56. The Court vacated the judgment and dismissed the action by Decision and Order dated January 17, 2020, noting Ms. Santos' affidavit and her mother's affidavit, and further noting that Winckelmann's description of the person who accepted substitute service as "21 to 35 years"; "5'9" to six feet tall" and "161 to 200 pounds" was "overly generic", that "there is an enormous discrepancy between a 5'9" 200 pound 21-year old and a six foot tall, 161 pound 35-year old, for example".

57. The court further held that "[t]hese huge ranges indicate that the process server was trying to be all-inclusive, to attempt to capture a person who could fit into one of those ranges. Moreover, defendant states that she has no relative named Luis Santos."

58. The Court "conclude[d] that the service on defendant in 2009 was invalid".

59. Metro Portfolios and Selip & Stylianou regularly issue or cause to be issued bank levies, income executions and other post-judgment communications seeking to collect upon judgments which rely on Winckelmann's affidavits.

60. Notwithstanding Defendants' knowledge that Winckelmann routinely falsified affidavits, they have not notified consumers or the Courts in these actions that they have no good faith basis to believe that the affidavits are proper.

61. To the contrary, Defendants continue to represent in its post-judgment collection communications directly or by implication, that the underlying affidavits of service are in all ways proper, when they have reason to believe the opposite is true.

62. Upon information and belief, and based on how Defendants have responded in the past to other incidents of systemic sewer service, Defendants have not undertaken any independent review or investigation with regard to the Winckelmann affidavits, despite the fact that they are attorney of record in the state court actions and have reason to believe a fraudulent document was filed therein.

63. In short, Defendants have been on notice for years of Winckelmann's fraudulent practices and falsification of affidavits of service, but have nonetheless continued to represent them explicitly or by material omission as truthful and unproblematic in communications to consumers, Courts, civil execution officers and others.

64. Defendants profit by means of all of the misconduct set forth above, obtaining a share of the money they are able to collect from consumers as a result of their misrepresentations and material omissions.

## **CLASS ALLEGATIONS**

65. The plaintiff, Nancy Santos, brings this action her own behalf, and on behalf of a class of all other persons similarly situated, pursuant to Fed. R. Civ. P. Rule 23.

66. Plaintiff seeks to represent the following Class:

    f. All natural persons;

    g. to whom Defendants issued a post-judgment collection communication;

    h. seeking to collect upon a New York state court default judgment;

    i. in which the underlying affidavit of service was signed Robert Winckelmann;

    j. which state or imply, affirmatively or by omission, that the Winckelmann affidavits of service used to obtain the judgements were proper, lawful, and/or accurate.

67. The Class is divided into three subclasses:

    a. an FDCPA subclass, which consists of all those who meet the Class criteria set

forth above and who, in addition, were sent said communications within one year of the initiation of the instant class action, and

b. a NYSGBL § 349 subclass, which shall consist of all those who meet the Class criteria set forth above and who, in addition, were sent said communications within three years of the initiation of the instant class action.

c. a Judiciary Law § 487 subclass, which shall consist of all those who meet the Class criteria set forth above and who, in addition, were sent said communications within six years of the initiation of the instant class action.

68. Excluded from the Class are:

a. Anyone against whom service was alleged to have been made by means of personal, in-hand delivery pursuant to CPLR 308(1);

b. anyone employed by counsel for Plaintiff in this action; and

c. any Judge to whom this case is assigned, as well as his or her immediate family and staff.

*Numerosity*

69. The debt collection communications at issue in this case are boilerplate documents whose language does not materially vary from one consumer to the next, and which, upon information and belief, were sent by the Defendants – who are high-volume debt collectors – to thousands of consumers.

70. Upon information and belief, the Class (including each Subclass) includes thousands of members and is sufficiently numerous that joinder of all members is impractical.

71. Although the exact number of Class members and their addresses are unknown to Plaintiff, they are readily ascertainable from Defendants' records.

*Existence and Predominance of Common Questions*

72. Common questions of law and fact exist as to Plaintiff and all members of the Class

and predominate over questions affecting only individual Class members.

73. These questions include:

   a. Whether Defendants' policy and practice, as outlined above, violated the FDCPA;

   b. Whether these acts and omissions also violated GBL § 349;

   c. Whether these acts violate New York Judiciary Law § 487;

   d. Whether Plaintiff and the other Class members are entitled to statutory damages, actual damages, costs and attorney's fees under the FDCPA;

   e. Whether Plaintiff and the other class members are entitled to actual, damages of $50 each, punitive damages, treble damages, costs and attorney's fees under GBL § 349;

   f. Whether Plaintiff and other Class members are entitled to treble damages and costs under New York Judiciary Law § 487.

*Typicality*

74. Plaintiff's claims are typical of the claims of the Class because, among other things, Plaintiff is:

   a. A natural person;

   b. to whom Defendants issued a post-judgment collection communication;

   c. seeking to collect upon a state court default judgment;

   d. in which the underlying affidavit of service was signed by Robert Winckelmann;

   e. and which stated or implied, affirmatively or by omission, that the Winckelmann affidavit of service used to obtain the judgment was proper, lawful and/or accurate.

75. Thus, Plaintiff's claims – based on the same boilerplate misstatements or material omissions as the claims of all other class members – are typical of the claims of the class.

76. Put differently, all of the claims are based on the same factual and legal theories and the Plaintiff, together with each Class member, has been subjected the same false, deceptive and unfair communications and acts by Defendants.

*Adequacy*

77. Plaintiff will fairly and adequately represent the interests of the class members. interests do not conflict with the interests of the members of the Class seeks to represent.

78. Plaintiff has retained counsel experienced in prosecuting class actions and in consumer protection matters. There is no reason why this Plaintiff and counsel will not vigorously pursue this matter.

*Superiority*

79. The class action is superior to other available means for the fair and efficient adjudication of the claims at issue herein.

80. The damages suffered by each individual Class member may be limited. Damages of such magnitude are small given the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendants' conduct.

81. Further, it would be virtually impossible for the members of the Class effectively to individually redress the wrongs done to them. Even if the members of the Class themselves could afford such individual litigation, the court system could not.

82. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties and the court system presented by the complex legal and factual issues of the case.

83. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

84. In the alternative, the Class may be certified because:

   a. the prosecution of separate actions by the individual members of the Class would create a risk of inconsistent or varying adjudication with respect to individual Class members which would establish incompatible standards of conduct for Defendants;

   b. the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and

   c. Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final and injunctive relief with respect to the members of the Class as a whole.

## COUNT I
### (Violations of the Fair Debt Collection Practices Act)

85. Plaintiff hereby restates, realleges, and incorporates by reference all foregoing paragraphs.

86. Congress enacted the Fair Debt Collection Practices Act to stop "the use of abusive, deceptive and unfair collection practices by many debt collectors." 15 U.S.C § 1692(a).

87. The FDCPA is remedial in nature and liberally construed.

88. A debt collector may not "use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. §1692e.

89. A debt collector may also not "use unfair or unconscionable means to collect any debt." 15 U.S.C. § 1692f.

90. Defendants violated the FDCPA by representing (including by material omission) to the Plaintiff and the other Class Members, as well as to the Courts and other third parties that the Winckelmann affidavits were true and proper when they had every reason to believe that the affidavits were perjured and fraudulent.

91. The collection communications in question are boilerplate documents.

92. These acts and omissions violate 15 U.S.C. §§ 1692f, 1692e, 1692e(2)(A), 1692e(10).

93. Defendants' unfair and deceptive collection practices were willful, intentional and sustained, and have caused Plaintiff and all others similarly situated to suffer cognizable harm.

94. Defendants' false, misleading, and deceptive acts have caused Plaintiff and all others similarly situated to suffer cognizable harm.

95. As a result of these violations, Plaintiff and the putative class are entitled to statutory damages, actual damages, costs and attorneys' fees pursuant to 15 U.S.C. § 1692k.

## COUNT II
### (New York State General Business Law § 349)

96. Plaintiff hereby restates, realleges, and incorporates by reference all foregoing paragraphs.

97. Each of the deceptive acts and practices set forth above, including but not limited to each deceptive act and practice set forth in Count I was committed in the conduct of business, trade, commerce or the furnishing of a service in this state and constituted a violation of New York General Business Law § 349 independent of whether it also constituted a violation of any other law.

98. Each of these actions was consumer oriented and involves misleading conduct that is recurring and has a broad impact upon the public.

99. This false and deceptive conduct impairs the rights of consumers, inducing them to make payments they would not make if fully informed of their rights.

100. Plaintiff and all others similarly situated have been damaged thereby.

101. As a result of Defendants' violations of § 349, Plaintiff and each other member of the Class are entitled to declaratory judgment; an injunction against the offending conduct, damages in the amount of $50 or his or her actual damages, treble damages, punitive damages, costs and attorneys' fees.

## COUNT III
### (New York Judiciary Law § 487)

102. Plaintiff hereby restates, realleges, and incorporates by reference all foregoing paragraphs.

103. Defendants' conduct occurred in actions in which it was attorney of record.

104. Defendants' conduct, described above, constitutes deceit or collusion.

105. Defendants' conduct also constitutes consent to deceit or collusion, *i.e.* consent to Winckelmann's deceit of the courts and state defendants by filing false affidavits.

106. Defendants acted with intent to deceive consumers and the court.

107. Defendants' conduct was therefore in violation of Judiciary Law § 487.

108. Plaintiff and the Class have been injured thereby.

109. As a result of Defendants' violations of New York Judiciary Law § 487, Plaintiff and each other member of the Class are entitled to declaratory judgment; an injunction against the offending conduct, actual damages, treble damages, and costs.

**WHEREFORE** plaintiff and members of the class respectfully request that this Court award:

A. An order certifying this case as a class action under Fed. R. Civ. P. 23, naming Plaintiff as Class Representative, and appointing Plaintiff's attorneys as Class Counsel;

B. A judgment declaring that Defendants have committed the violations of law alleged in this action;

C. Statutory, Actual, Treble and Punitive Damages;

D. Injunction of the offending conduct;

E. An order awarding disbursements, costs, and attorneys' fees; and

F. Such other and further relief that may be just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands a trial by jury as to all issues so triable.

Dated: August 20, 2020
New York, NY

Respectfully,

**SCHLANGER LAW GROUP LLP**

*/s/ Daniel A. Schlanger*
Daniel A. Schlanger
80 Broad Street, Suite 1301
New York, NY 10004
T. (212) 500-6114
F. (646) 612-7996
dschlanger@consumerprotection.net

**HUDSON VALLEY JUSTICE CENTER**

*/s/Jason Mays*
Jason Mays
19 Court Street, Suite 204
White Plains, NY 10601
T. (914) 308-3490
JMays@HVJC.ORG